# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
Filed: January 27, 2022

| | | |
|---|---|---|
| * * * * * * * * * * * * | | |
| CAMILLE NYBOER, | * | Unpublished |
| | * | |
| Petitioner, | * | No. 21-1010V |
| | * | |
| v. | * | Special Master Gowen |
| | * | |
| SECRETARY OF HEALTH | * | Attorneys' Fees and Costs; |
| AND HUMAN SERVICES, | * | Reasonable Basis; Withdraw |
| | * | of Petition. |
| Respondent. | * | |
| * * * * * * * * * * * * | | |

*Andrew D. Downing,* Van Cott & Talamante, PLLC, Phoenix, AZ, for petitioner.
*Voris E. Johnson,* U.S. Department of Justice, Washington, D.C., for respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

On December 9, 2021, Camille Nyboer ("petitioner") filed a motion for final attorneys' fees and costs.  Petitioner's ("Pet.") Fees Motion (Fees App.) (ECF No. 18).  For the reasons discussed below, I **GRANT** petitioner's motion and find a reasonable award for final attorneys' fees and costs of $7,709.40.

### I.     Procedural History

On March 1, 2021, Camille Nyboer ("petitioner"), filed a petition in the National Vaccine Injury Compensation Program.[2]  Petitioner alleges that she suffered an adverse reaction after receiving the human papillomavirus vaccine ("HPV" or "Gardasil") on March 2, 2018, May 9, 2018, and October 9, 2018.  Petition (ECF No. 1).  Petitioner alleged that as a result of receiving the HPV vaccinations, she suffered an adverse reaction.  *Id.*

---

[1] Pursuant to the E-Government Act of 2002, *see* 44 U.S.C. § 3501 note (2012), because this opinion contains a reasoned explanation for the action in this case, I am required to post it on the website of the United States Court of Federal Claims.  The court's website is at http://www.uscfc.uscourts.gov/aggregator/sources/7.  **This means the opinion will be available to anyone with access to the Internet.**  Before the opinion is posted on the court's website, each party has 14 days to file a motion requesting redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy."  Vaccine Rule 18(b).  "An objecting party must provide the court with a proposed redacted version of the decision." *Id.*  **If neither party files a motion for redaction within 14 days, the opinion will be posted on the court's website without any changes.** *Id.*

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-10 to 34 (2012) (hereinafter "Vaccine Act" or "the Act").  Hereinafter, individual section references will be to 42 U.S.C. § 300aa of the Act.

On March 12, 2021, petitioner filed medical records to support her petition. Notice of Filing (ECF No. 6). On April 8, 2021, petitioner filed the PAR Medical History Questionnaire and a statement of completion. ECF Nos. 8 & 9. The case was reassigned to the undersigned's docket on September 24, 2021. Notice of Reassignment (ECF No. 11).

On October 4, 2021, I issued an initial order and set a deadline of December 3, 2021 to file an initial status report indicating how respondent wished to proceed in this case. Initial Order (ECF No. 13).

On November 2, 2021, the I issued an Order, informing the petitioner that the statutory 240-day time period for the special master to issue a decision had passed. Order (ECF No. 14). The order states that a petitioner "may submit to the U.S. Court of Federal Claims a notice in writing choosing to continue or to withdraw the petition," and to provide the written notice within thirty days. Order.

On December 1, 2021, petitioner filed a Notice of Intent to Withdraw the Petition. Notice of Intent (ECF No. 15). Petitioner stated, "Petitioner hereby gives Notice, pursuant to 42 U.S.C § 300aa-21(b)…has elected to withdraw her Petition filed in the above-captioned manner. Petitioner requests the Court issue an order concluding proceedings." *Id.* Additionally, petitioner stated, "Petitioner…was injured by the Gardasil vaccine-a covered vaccine in the Vaccine Injury Compensation Program. Petitioner was statutorily compelled to initiate this claim prior to pursuing a cause of action against Merck directly." *Id.*

On December 2, 2021, I issued an Order Concluding Proceedings. ECF No. 16.

Then on December 9, 2021, petitioner filed this motion for final attorneys' fees and costs, in addition to medical literature. *See* Pet. Exhibits ("Ex.") 9-13; Fees App. (ECF Nos. 17 & 18). On December 20, 2021, respondent filed a response to petitioner's motion, opposing the award of attorneys' fees and costs, stating that "petitioner's claim is not supported by a reasonable basis and was not brought in a good faith effort to litigate its merits." Respondent ("Resp.") Response (ECF No. 19).

Petitioner filed a reply to respondent's response, stating that "respondent's arguments lack any foundation or support," and that the petitioner is entitled to legal counsel to guide them through the process [of bringing a claim] and respondent's "over-reaching" position that a petitioner gets "punished for exercising her statutory rights and exiting the Program must fail." Pet. Reply (ECF No. 20). Additionally, petitioner attached two recent attorneys' fees decisions, deciding this very issue. Pet. Reply Exs. A & B (ECF Nos. 20). On December 30, 2021, petitioner filed an amended motion for final attorneys' fees and costs, providing a supplemental invoice. Pet. Supplemental ("Supp.") Mot. (ECF No. 21).

This matter is now ripe for adjudication.[3]

## II.     Petitioner's Underlying Claim

---

[3] This decision encompasses petitioner's first and amended motion for final attorneys' fees and costs.

Petitioner received her first HPV vaccination on March 2, 2018. Petition; Pet. Exhibit ("Ex.") 4 at 55. On the review of systems it was noted that petitioner was negative for syncope, negative for decreased concentration and sleep disturbances. Pet. Ex. 4 at 54. Further, petitioner was using albuterol prior to exercising to assist with breathing. *Id.* at 55. At this appointment, she received the meningococcal polysaccharide conjugate vaccine and the first HPV dose. *Id.* Petitioner stated that on Easter Sunday of 2018, she fainted while attending Easter Sunday mass. Pet. Ex. 1 at ¶ 4.

On May 9, 2018, petitioner received the second HPV vaccination and on October 9, 2018, she received her final HPV vaccination. Pet. Ex. 4 at 2. On December 21, 2018, petitioner saw her primary care physician for congestion, cough, and blood-tinged mucus in the morning. Pet. Ex. 4 at 63. The physical exam revealed she had congestion and she was diagnosed with acute sinusitis and bilateral acute middle ear effusion. *Id.* at 64.

On February 4, 2019, petitioner returned to her PCP for a non-productive cough. Pet. Ex. 4 at 65. It was recorded as a "dry cough" and occurred sometimes with fits of coughing. *Id.* Eventually petitioner was given a course of steroids. *Id.* at 67.

On May 4, 2020, petitioner's mother called the PCP office to discuss, "weakness [patient] is having." Pet. Ex. 4 at 87. It was noted that petitioner's mother wanted to have a video appointment, stating that petitioner lost six pounds, gets dizzy and blacks out when standing up and had bad cramps last cycle. *Id.* at 89. Petitioner was seen later the same day. Under "History of Present Illness," ("HPI") petitioner reported that she feels like "things go black" when she tries to stand up after sitting or laying down. *Id.* at 90. Petitioner also reported that she feels like she is going to pass out, and feels sweaty and nauseated. *Id.* Petitioner also reported that the last few cycles she had bad cramps. *Id.* It was recommended the petitioner have a consultation with a cardiologist and that she increase her water and salt intake. *Id.*

On May 13, 2020, petitioner had an appointment with cardiologist, Dr. Steven Gremillion. Pet. Ex. 6 at 2. She was seen for an evaluation for "syncope." *Id.* Under the HPI, it was noted that petitioner's second episode of syncope occurred while at church, which was associated with nausea, diaphoresis, and dizziness. *Id.* It also noted that "about 2 months ago" petitioner started experiencing dizziness and near syncope that was different and now the episodes occur almost daily and are related with standing from a sitting or lying position. *Id.* Dr. Gremillion diagnosed petitioner with syncope but noted that her recent symptoms sound "more orthostatic in nature" and he wanted to obtain an echocardiogram, stress test and Holter monitor. *Id.* at 6. An addendum to the record from May 13, 2020 notes that petitioner had a normal exercise stress test and echocardiogram. *Id.* at 6. The Holt Monitoring system found no significant atrial arrhythmias, no significant pauses or AV block detected, but complaints of dizziness and black vision with standing correlated with sinus rhythm and sinus tachycardia. *Id.* at 9.

During a telephone call with petitioner's mother on June 15, 2020, it was recorded that petitioner was diagnosed with POTS. *Id.* at 95. At an appointment with petitioner's OB/GYN on July 28, 2020, petitioner reported that she was diagnosed with POTS-and it was noted that

3

petitioner was taking over-the-counter salt sticks, but "does not follow with a doctor." Pet. Ex. 8 at 2.

In her affidavit, petitioner stated that she never had any fainting issues and was a great athlete prior to receiving the HPV vaccination on March 2, 2018. Pet. Ex. 1 at ¶ 1. She stated that after she received the third dose of the vaccine, she began to experience more symptoms of weakness and nausea after dancing. *Id.* at ¶ 4. Petitioner explained that she could barely get through a four-hour dance practice, when she was previously able to get eleven hours of practice "perfectly fine." *Id.*

Petitioner stated that her cardiologist, Dr. Gremillion diagnosed her with POTS after she had multiple episodes of dizziness. *Id.* at ¶ 5. She explained that every morning she has to take salt pills to prevent additional POTS episodes. *Id.*

Petitioner also filed medical literature to support her claim. Pet. Exs. 9-13. One article petitioner filed, *Postural tachycardia syndrome following human papillomavirus vaccination,* reports on six-cases of postural tachycardia syndrome ("POTS") following HPV vaccination. Pet. Ex. 12.[4] Another article hypothesizes that the HPV vaccine induced small-fiber neuropathy and dysautonomia could be the pathogenesis for other autonomic nervous system injuries. Pet. Ex. 9.[5] Petitioner also filed the Gardasil Product Monograph ("package insert"). Pet. Ex. 3. While the package insert does not specifically discuss POTS or autonomic dysfunction under "warnings and precautions" or "adverse reactions," it does list, fatigue, nausea, myalgia, and headaches as adverse events reported 1 to 15 days post-vaccination. *Id.* at 6. Further, the package insert explained that 3.3% of Gardasil recipients reported new medical conditions "indicative of systemic autoimmune disorders," but those rates were similar to rates reported following control studies where patients were injected with saline placebo. *Id.* at 8. Additionally, the package insert includes spontaneously reported post-marketing adverse events reported, which include acute disseminated encephalomyelitis ("ADEM"), Guillain-Barre syndrome ("GBS"), motor neuron disease, and transverse myelitis. *Id.* at 10.

### III.    Legal Standard for Adjudicating Attorneys' Fees and Costs

In establishing a system for compensation of vaccine-related injuries, the Vaccine Act provides that [t]he United States Court of Federal Claim and the United States Court of Federal Claims special masters shall, in accordance with this section, have jurisdiction over proceedings to determine if a petitioner under section 300aa-11 of this title is entitled to compensation under the Program and the amount of compensation. 42 U.S.C. §300aa-12(a). The Vaccine Act was intended to facilitate compensation by providing "fast, informal adjudication," of no-fault injury claims within the office of special masters in lieu of traditional tort suits against vaccine manufacturers. *Bruesewitz v. Wyth LLC,* 562 U.S. 223, 228 (2011). The Vaccine Act allows only limited avenues for existing the Program in favor of tort litigation. Typically, adjudication

---

[4] S. Blitshteyn, *Postural tachycardia syndrome following human papillomavirus vaccination,* 21 European Journal of Neurology, 135-39 (2014). [Pet. Ex. 12].

[5] Martinez-Lavin, Manuel, *Hypothesis: Human papillomavirus vaccination syndrome-small fiber neuropathy and dysautonomia could be its underlying pathogenesis,* Clin. Rheumatol. (2015). [Pet. Ex. 9].

in the Court of Federal Claims and rejection of the resulting judgment is a prerequisite to seeking any other available tort relief.  *Id.* at 228; *see also* 42 U.S.C. §300aa-11(2)(A)(i);

The Vaccine Act permits an award of reasonable attorneys' fees and costs.  §15(e). Section 300aa-15(e)(1) of the Vaccine Act provides that, "[i]f the judgment of the United States Court of Federal Claims on such a petition does not award compensation, the special master or court may award an amount of compensation to cover petitioner's reasonable attorneys' fees and costs incurred in any proceeding on such petition if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought."

## IV. Party's Positions

### a. Respondent's Argument

Respondent acknowledged that even if a petition is unsuccessful, an award of attorneys' fees and costs is not mandatory, but instead within the discretion of the special master.  Resp. Response at 7.  Respondent argues that petitioner's claim lacks good faith and reasonable basis and, therefore, "the special master lacks authority to award even discretionary fees and costs award."  *Id.* at 8.

With respect to good faith, respondent argues that the intent of the Vaccine Act was to "divert litigation over alleged vaccine injuries away from vaccine manufacturers, in order to help ensure a robust supply of vaccines."  *Id.* at 8.  Specifically, respondent asserts:

> Congress intended that the Vaccine Program would serve as the primary vehicle for resolving vaccine injury claims in this country.  While the Vaccine Act provides a mechanism by which petitioners may either exit the Program after set time periods and under certain conditions, or reject the court's judgment and then bring a civil suit against a vaccine manufacturer…Congress plainly intended that petitioners would bring petitions in the Program in good faith-that is, with the intent to litigate the merits of the claim.

*Id.* at 19.  Respondent contends that the petitioner in this case did not have good faith because "it is apparent that petitioner never had any intention of litigating the merits of her case in the Program."  *Id.*  Respondent suggests that the petitioner did not bring her case in good faith because she specifically stated that she filed her claim with the program to satisfy the statutory requirement in Section 11(a)(2) so that she could exit the program and bring a civil suit against Merck.  *Id.*  Finally, respondent asserts that the reimbursement for attorneys' fees and costs is essentially asking the Vaccine Trust Fund to "subsidize her civil suit against Merck, all while depriving Merck of the *quid quo pro* of a decision resolving her claim on the merits (which Merck could cite in petitioner's civil suit).

Respondent also argues that petitioner has not met her burden to affirmatively demonstrate that there was a reasonable basis for filing this petition.  Specifically, respondent states that petitioner's claim of a vaccine-injury are unsubstantiated by the medical records or a medical opinion.  *Id.* at 13.  Respondent contends that, "petitioner relies almost entirely on the

5

affidavits of her and her mother to argue that her alleged symptoms began in temporal proximity to her Gardasil vaccinations, and that she has been diagnosed with POTS." *Id.* Respondent observes that the first feelings of dizziness or feelings of pre-syncope upon standing that were documented in the medical record was on May 13, 2020, which would put those symptoms "at best over a year-and-a-half after her third dose of Gardasil." *Id.* at 14; *see also* Pet. Ex. 6 at 2. Further, respondent argues that while a tilt table test was recommended by petitioner's physician, no such test occurred, and the diagnosis was not offered by any medical professional in the records. *Id.* Respondent argues that, "…given the lack of any treating physician support for vaccine-causation and the extremely attenuated temporal relationship between vaccination and the onset of symptoms, there is not even a scintilla of objective evidence in the medical records to support petitioner's claim in this case." *Id.* at 15.

Finally, respondent argues that the inclusion of the Gardasil insert does not support a finding of reasonable basis. *Id.* at 16. Respondent contends that "the complaints of fatigue, headache, nausea, dizziness and abdominal pain," identified in the package insert as post-vaccination complaints by vaccinees are "vague and common complaints," and are not "POTS or dysmenorrhea," which petitioner is alleging is her injury. *Id.* Respondent argues that the package insert has extremely limited probative value and does not establish a reasonable basis for petitioner's claim. *Id.*

### b. Petitioner's Position

In her reply to respondent's response, petitioner argues that the respondent is correct that the Vaccine Act provides *some* liability protections, but those protections are limited only to allegations of injury or death from side effects that were unavoidable even though the vaccine was properly prepared and accompanied by proper directions and warnings. Pet. Reply at 2-3 (citing §300aa-22(b)(1)). Petitioner asserts that the Vaccine Act does not protect vaccine manufacturers from other tort claims that petitioners may seek to pursue in other forums.

Additionally, petitioner states that the respondent acknowledges that the Act also permits petitioners to exit the Program after set periods of time, "but then wrongly argues that a case must be litigated to completion for good faith to exist." *Id.* at 3. Petitioner asserts that the respondent has no basis "to state that petitioner is not within her rights to decide to withdraw a petition and to litigate directly against the vaccine manufacturer for claims not barred by the Act. *Id.* Petitioner contends that respondent "attempts to re-define "good faith" with a never before asserted or recognized definition that good faith as used for an award of attorneys' fees and costs means an intent to litigate the merits of the claim to completion." *Id.* at 4. Petitioner cites to two cases, *Thomas* and *Hoover,* recently decided by other special masters that rejected respondent's arguments about requiring cases to be litigated to completion to comply with good faith. *Id.* at 5 (citing *Thomas v. Sec'y of Health & Human Servs.,* No. 20-886V, 2021 WL 2389837, at *6 (Fed. Cl. Spec. Mstr. May 17, 2021) and *Thomas v. Sec'y of Health & Human Servs.,* No. 20-1394V, 2021 WL 5575768, at *7 (Fed. Cl. Spec. Mstr. Nov. 1, 2021).

Further, petitioner also contends that she is entitled to legal representation to guide them through the process and that she is entitled to an award of attorneys' fees and costs if the good faith and reasonable basis requirements are met under analysis specific to the case. *Id.*

### V.     Legal Standard for Availability of Attorneys' Fees and Costs for Withdrawn Petitions

In establishing a system for compensation of vaccine-related injuries the Vaccine Act provides that "[t]he United States Court of Federal Claim and the United States Court of Federal Claims special masters shall, in accordance with this section, have jurisdiction over proceedings to determine if a petitioner under section § 300aa-11 of this title is entitled to compensation under the Program and the amount of such compensation." §12(a).  The Vaccine Act was intended to facilitate compensation by providing "fast, informal adjudication," of no-fault injury claims within the office of special masters in lieu of traditional tort suits against vaccine manufacturers." *Bruesewitz v. Wyeth LLC,* 562 U.S. 223, 228 (2011).  As respondent correctly noted, "The *quid pro quo"* for this no-fault program "designed to stabilize the vaccine market, was the provision of significant tort-liability protection for vaccine manufacturers." *Id.* at 229. Accordingly, the Vaccine Act allows limited avenues for a petitioner to pursue civil actions against manufacturers.  Pursuant to the Act, a petitioner *must* file a petition in the Court of Federal Claims and reject the resulting judgment as a prerequisite to seeking other available tort relief.  *Id.* at 228; *see also* §§ 11(2)(A)(i), 21(a) (emphasis added).

Section 12(d)(3)(A)(ii) of the Vaccine Act provides that "[a] special master to whom a petition has been assigned shall issue a decision….as expeditiously as practicable but not later than 240 days….after the date the petition was filed."  Further, Section 12(g) provides that if the special master fails to make a decision on the petition within the prescribed timeframe, the special master "shall notify the petitioner….that [they] may withdraw the petition under section 300aa-21(b)."

With regard to bringing an action against a vaccine manufacture, section 11(a)(2)(A)(ii) of the Act provides that,

> No person may bring a civil action for damages or in an unspecified amount against a vaccine administrator or manufacturer in a State or Federal court for damages arising from a vaccine-related injury or death….unless a petitioner has been filed, in accordance with section 300aa-16 of this title, for compensation under the Program for such injury or death….and such person elects to withdraw such petition under section 300aa-21(b) of this title or such petition is considered withdrawn under such section.

In this case, petitioner exited the Program pursuant to section 21(b) with the stated intention of filing a lawsuit against the vaccine manufacturer.  To effectuate petitioner's requested action, Vaccine Rule 10(d) provides that the special master may issue an order concluding proceedings in response to petitioner's notice of withdrawal and "upon entry will be deemed a judgment for purposes of 42 U.S.C. §300aa-15(e)(1)."

Under section 15(e)(1) of the Act, the "special master or the court may award an amount of compensation to cover petitioner's reasonable attorneys' fees and other costs incurred in any proceeding on such petition if the special master or court determines that the petition was

brought in good faith and there was a reasonable basis for the claim for which the petition was brought."

With Vaccine Rule 10(d) and section 300aa-15 of the Act in tandem, my order concluding proceedings in this case constitutes a judgment on this petition that does not award compensation.  Thus, this case is only eligible for reasonable attorneys' fees and costs upon a showing that the petition was brought in good faith and with a reasonable basis.

Petitioners are entitled to a presumption of good faith as is the government.  *Grice v. Sec'y of Health & Human Servs.,* 36 Fed. Cl. 114, 121 (1996).  Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice,* 36 Fed. Cl. at 121.  Thus, so long as Petitioner had an honest belief that her claim could succeed, the good faith requirement is satisfied. *See Riley v. Sec'y of Health & Human Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma*, 1993WL 496981, at *1); *Turner v. Sec'y of Health & Human Servs.*, 2007 WL 4410030, at *5.  Good faith is a subjective test, satisfied through subjective evidence.  *Cottingham v. Sec'y of Health & Human Servs.,* 971 F.3d 1337, 1344 (Fed. Cir. 2020).

Whereas "reasonable basis" is an objective standard.  An analysis of reasonable basis requires more than just a petitioner's belief in her claim.  *Turner,* 2007 WL 4410030, at *6-7.  Instead, the claim must at least be supported by objective evidence-medical records or medical opinion.  *Sharp-Roundtree v.Sec'y of Health & Human Servs.*, No. 14-804V, 2015 WL 12600336, at *3 (Fed. Cl. Spec. Mstr. Nov. 3, 2015).  Objective medical evidence, including medical records…even where the records provide only circumstantial evidence of causation can support a showing of reasonable basis.  *Cottingham,* at 1346 (Fed. Cir. 2020).  Further, "absence of an express medical opinion on causation is not necessarily dispositive of whether a claim has reasonable basis." *James-Cornelius v. Sec'y of Health & Human Servs.,* 984 F.3d 1374, 1379 (citing *Cottingham,* at 1346).  The factors to be considered may include "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation. *Amankwaa*, 138 Fed. Cl. at 289.

VI.  Analysis

a. Good faith

In the two cases petitioner cites in her reply, *Hoover* and *Thomas,* both Special Masters explained that the Vaccine Act specifically creates a mechanism for petitioners to withdrawal from the program and pursue civil litigation.  *Thomas v. Sec'y of Health & Human Servs.* No. 20-886V*,* 2021 WL 2389837, at *3-4 (Fed. Cl. Sepc. Mstr. May 17, 2021); *Hoover v. Sec'y of Health & Human Servs.,* No. 20-1394V, 2021 WL 5575768, at *7-8 (Fed. Cl. Spec. Mstr. Nov. 1, 2021).  Further, the special masters in those decisions explained that complying with the statute to withdraw a petition to pursue civil litigation is not inconsistent with the purpose of the Vaccine Act.  I agree with my colleagues.  Filing the petition with the Court of Federal Claims special masters and utilizing the 240-day withdrawal option is a creation of the Vaccine Act.  Thus, it cannot be said that a petitioner utilizing this statutorily created withdrawal option is doing something that conflicts with the Vaccine Act.

Further, respondent does not cite to any authority supporting his assertion that good faith requires "an attempt to adjudicate the merits of the claim." Instead, this assertion is incompatible with both the statute, which provides a mechanism for a petitioner to withdraw her claim after a certain period of time, and the legal framework of good faith for claims brought before this Court. Instead, petitioner argues that the meaning of good faith is well-settled and refers to her belief that the HPV vaccine caused her injury, and not her intention regarding the manner of litigation. Pet. Reply at 2 (citing *Di Roma v. Sec'y of Health & Human Servs.,* No. 90-3277V, 1993 WL 4961981, at 1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). Petitioner's stated intention to file suit directly against the vaccine manufacturer in a different forum is consistent with a sincerely held belief that a vaccine-caused injury has occurred. Finally, taking respondent's argument to its logical conclusion would not only increase attorneys' fees and costs over time, but it would cause further delay in adjudicating other claims before the Court when docket caseloads are rising.

For these reasons, I find that the petition was filed in good faith.

### b. Reasonable basis

In discussing the reasonable basis requirement in *Cottingham*, the Federal Circuit stressed the *prima facie* petition requirements of section 300aa-11(c)(1) of the Vaccine Act. 971 F.3d at 1345-46. Specifically, the petition must be accompanied by an affidavit and supporting documentation showing that the vaccinee:

(1) received a vaccine listed on the Vaccine Injury Table;
(2) received the vaccination in the United States, or under certain stated circumstances outside the United States;
(3) sustained (or had significantly aggravated) an injury as set forth in the Vaccine Injury Table (42 C.F.R § 100.3(e)) or that was caused by the vaccine;
(4) experienced the residual effects of the injury for more than six months, died, or required an in-patient hospitalization with surgical intervention; and
(5) has not previously collected an award or settlement of civil action for damages for the same injury.

*Id.* In this case, respondent does not dispute elements one, two, four or five. Instead, respondent's objection to reasonable basis is that petitioner cannot point to evidence that demonstrates that she sustained an injury caused by the vaccine. Resp. Response at 13. More specifically, respondent argues that the medical records fail to include the diagnosis which she is alleging the vaccine caused and cannot establish a proximate temporal association of symptom onset to the vaccine. These issues respondent raised are related to vaccine causation and to establishment of entitlement, a petitioner must prove these elements by preponderant evidence. However, the burden of proof to establish reasonable basis for attorneys' fees is "more than a mere scintilla but less than a preponderance of proof." *Cottingham* at 1346.

Petitioner received the first Gardasil vaccination on March 2, 2018. Pet. Ex. 4 at 2, 55. In her affidavit, petitioner stated that while at mass on Easter Sunday (April 1, 2018), "I told my

dad that I felt like I was about to pass out. I ended up leaving the pew and tried to run to the back, but I only got a few feet before I fainted. Thankfully, my dad caught me and all I remember is waking up on the floor." Pet. Ex. 1 at ¶ 2. She received the second Gardasil shot on May 9, 2018 and the third on October 9, 2018. Pet. Ex. 4 at 2. On May 4, 2020, petitioner's mother called the petitioner's primary care physician, indicating that petitioner was having weakness. Pet. Ex. 4 at 87. During the phone call, petitioner's mother indicated that petitioner had lost weight, gets "dizzy and blacks out when she stands up," but does not have any respiratory symptoms. *Id.* at 89. The same day, when petitioner was seen by Dr. Calandro, petitioner reported that she has "had many episodes of feeling like she has passed out (has happened at church and at dance." *Id.* at 90. Petitioner also reported that she feels "sweaty and nauseated," and that her hearing goes out. *Id.* During the orthostatic exam, it showed that petitioner had a heart rate increase greater than 20 beats per minute from lying to standing and had a "slight dip in blood pressure." *Id.* at 93. It was recommended that she increase her salt and water intake and see a cardiologist "given the possible orthostatic hypotension episodes." *Id.*

On May 13, 2020, petitioner had an appointment with Dr. Steven Gremillion at the Louisiana Cardiology Associates. Pet. Ex. 8 at 2. At this appointment, petitioner reported an episode of syncope occurred while at church and it was associated with nausea, diaphoresis, and dizziness. At this appointment petitioner reported that "about 2 months ago she started experiencing dizziness and near syncope that was slightly different. These episodes occur almost daily and related with standing from a sitting or lying position." *Id.* The Holter monitor showed that petitioner's complaints of dizziness and black vision with standing up "correlated with sinus rhythm and sinus tachycardia." *Id.* at 9.

During a June 15, 2020 phone call with Nurse Melissa Garcia, petitioner's mother reported that petitioner had an IgA deficiency, and "also diagnosed with POTS." Pet. Ex. 4 at 95. In records from August 2020 and November 2020, POTS was included under the "Problem List" and it indicated that it began in May 18, 2020 and it had not resolved. *See* Pet. Ex. 4 at 2, 101. In the August 10, 2020 record, under the "Patient Active Problem List," it also indicates that petitioner has "functional dyspepsia and vasovagal syncope," along with POTS. *Id.* at 101.

Additionally, petitioner filed the package insert for the vaccine at issue. Pet. Ex. 3. The insert constitutes objective evidence to potentially support causation when paired with a petitioner's medical records. *Cottingham,* 971 F.3d at 1346. The package insert explains that some recipients of the HPV vaccine have suffered from nausea, dizziness, and upper abdominal pain post-vaccination. Pet. Ex. 3 at 9. In this case, petitioner was alleging she had been dizziness and near syncope events, along with abdominal pain (dyspepsia) post-vaccination. Petitioner also asserted that she experienced a syncope event approximately one month after her first vaccination in her affidavit. As noted by the Federal Circuit in *James-Cornelius v. Sec'y of Health & Human Servs.,* "a patient's or parent's testimony may be the best, or only direct evidence," of the occurrence of medical symptoms, "such as a headache, or other pain, dizziness, nausea, and vomiting." 984 F.3d at 1380. Petitioner also reported this fainting event to her treating physician later as well, making it more likely that the event occurred.

While respondent correctly raises issues of diagnosis and onset as being problematic for petitioner on entitlement with the record as it stands today, and she would have had to

10

supplement the record with additional evidence had she continued, petitioner's rendition of the syncopal episode at church within 30 days of the first Gardasil vaccination, its report to her physician at a later date and the known occurrence of syncope in conjunction with POTS has barely provided "more than a mere scintilla" of evidence to support reasonable basis through the filing of medical records, affidavit noting that her symptoms began after vaccination and the Gardasil package insert.  For the reasons stated above, I find that petitioner has established a reasonable basis, for filing her claim.

VII. **Attorneys' Fees and Costs**

   a. **Legal Standard for Attorneys' Fees and Costs**

Petitioners "[bea[r] the burden of establishing the hours expended, the rates charged, and the expenses incurred" are reasonable.  *Wasson v. Sec'y of Health & Human Servs.,* 24 Cl. Ct. 482, 484 (1993).  Counsel must submit fee requests that include contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service.  *See Savin v. Sec'y of Health & Human Servs.,* 85 Fed. CL. 313, 316-18 (2008).  Adequate proof of the claimed fees and costs should be presented when the motion is filed.  *Id.* at 484 n.1.  The special master has the discretion to reduce awards *sua sponte*, independent of enumerated objections from the respondent.  *Sabella v. Sec'y of Health & Human Servs.,* 86 Fed. Cl. 201, 208-09 (Fed. Cl. 2009); *Savin v. Sec'y of Health & Human Servs.,* 85 Fed. Cl. 313 (Fed. Cl. 2008), *aff'd* No. 99-537V, 2008 WL 2066611 (Fed. Cl. Spec. Mstr. Apr. 22, 2008).

   b. **Attorneys' Fees**

Petitioner requests reimbursement for attorneys' fees in the total amount of $9,474.00 for the work performed by her attorneys, Mr. Drew Downing, Ms. Courtney Van Cott and two paralegals that performed work on her case for 2020 and 2021.  Pet. Fees Ex. A; Pet. Supp. Fees Mot., Ex. A.  Mr. Downing requests a rate of $385.00 per hour for work performed on this case in 2020 and 2021 and a rate of $135.00 per hour for work performed by two paralegals in the same time period.

The requested rates have been previously awarded to Mr. Downing and Ms. Van Cott by myself and other special masters and are consistent with the OSM Attorneys' Rate Fee Schedule.  *See, e.g.*, *Colbath v. Sec'y of Health & Hum. Servs.*, No. 17-599V, 2021 WL 1120986, at *2 (Fed. Cl. Spec. Mstr. Feb. 23, 2021); *Dreyer v. Sec'y of Health & Hum. Servs.*, No. 18-764V, 2019 WL 6138132, at *3 (Fed. Cl. Spec. Mstr. Oct. 29, 2019); *Antolick v. Sec'y of Health & Hum. Servs.,* No. 16-1460V, 2020 WL 524776, at *4 (Fed. Cl. Jan. 13, 2020).

   c. **Hours Expended**

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera,* 515 F.3d at 1348. Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [his] experience and judgment, [is] reasonable for the work done." *Saxton ex rel. Saxton v. Sec'y of Health & Hum. Servs.,* 3 F.3d 1517, 1522 (Fed.

11

Cir. 1993). In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen v. Sec'y of Health & Hum. Servs.,* 102 Fed. Cl. 719, 728-29 (2011) (affirming the special masters' reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Hum. Servs.,* 38 Fed. Cl. 403, 406 (1997) (affirming the special master's reduction of attorney and paralegal hours).

Petitioner has provided a detailed invoice outlining the work performed by each person who worked on her case. Based on the invoices, Mr. Downing performed at total of 13.6 hours[6], Ms. Van Cott performed a total of 7.8 hours and the two paralegals performed a total of 15.3 hours of work. While some of the work performed by the paralegals are tasks consistent with pursuing a claim in the Vaccine Program, I find that a reduction is necessary due to entries that appear to be duplicative and excessive. For example, on December 8, 2020, Mr. Robert Cain, reviewed medical records received from Louisiana Cardiology Associates and updated the New Case Medical Records Intake Form," and on the same day Ms. Danielle Avery "analyzed the medical records from Louisiana Cardiology Associates….and updated client Medical Records Intake Form." Pet. Fees App., Ex. A at 4, 7. The same occurred on December 20, 2020 for records received from Baton Rouge Orthopaedic Clinic, where Ms. Avery provided "analysis of medical records received from Baton Rouge Orthopaedic Clinic….prepare records for filing, update client medical file; update client Medical Records Intake Form," and Mr. Cain did the same the following day, indicating that he "review[ed] medical records received from Baton Rouge Orthopaedic Clinic and update the new case Medical Records Intake form." *Id.* at 4 & 7. It appears that this occurred at least two more times after medical records were obtained. Reviewing medical records is not *per se* unreasonably excessive, however, when two paralegals appear to be doing the same work and updating the same form for internal record keeping, it becomes duplicative, especially when the petitioner has determined at the outset that they will be opting out of the Program to pursue civil litigation.

While acknowledging that the Vaccine Act permits petitioners to exit the program to bring a civil action outside of the program, petitioner's attorney should be wary of excessive and duplicative billing, even when trying to complete the substantive work to establish a reasonable basis for the pendency of the case. In this case, at the time of filing the petition, petitioner decided to pursue litigation against Merck. *See* Petition at Preamble (stating "Petitioners are statutorily compelled to initiate this claim prior to pursuing a cause of action against Merck directly."). Recognizing that the Act requires medical records and supportive documentation be filed in the program to establish good faith and reasonable basis, petitioners intending to exit the program in pursuit of civil litigation outside of the VICP should attempt to minimize the time billed for analysis of the medical records, which are ultimately being used for proof in a case in an alternative forum.

In this case, Mr. Downing and Ms. Van Cotte's time expenditure on this case was directed an analyzing petitioner's medical records, when prior to filing the petition, Mr. Downing had discussed "opting out to sue Merck directly." Pet. Fees App., Ex. A at 1. This time spent by both attorneys analyzing the medical records, when paralegals were also analyzing the same medical records is not reasonable. Accordingly, I will reduce the attorneys fee by $2,500.00 for

---

[6] This amount also includes the time spent in petitioner's supplemental attorneys' fees motion to file a reply to respondent's opposition to petitioner's initial attorneys' fees application. *See* Pet. Supp. Mot., Ex. A.

duplicative billing by the paralegals and attorney time spent pursuing litigation outside the program. Therefore, petitioner is awarded $6,974.00 in attorneys' fees.

### d. Attorneys' Costs

Like attorneys' fees, a request for reimbursement of costs must be reasonable. *Perreira v. Sec'y of Health & Human Servs.,* 27 Fed. Cl. 29, 34 (Fed. Cl. 1992). In this case, petitioner is requesting a total of $745.40 in attorneys' costs. Petitioner is seeking reimbursement for costs such as filing the petition, obtaining medical records, and postage. Petitioner has provided adequate documentation supporting these costs and they are reasonable. As such, petitioner is awarded the requested costs in full.

## VIII.  Conclusion

In conclusion with the above, petitioner's motion for attorneys' fees and costs are hereby **GRANTED,** and petitioner is awarded $9,709.40, representing $8,974.00 in attorneys' fees and $735.40 in attorneys' costs.

| | |
|---|---|
| Attorneys' Fees Requested | $9,474.00 |
| (Reduction of Fees) | - ($2,500.00) |
| **Total Attorneys' Fees Awarded** | **$6,974.00** |
| | |
| Attorneys' Costs Requested | $735.40 |
| (Reduction of Costs) | ---- |
| **Total Attorneys' Costs Awarded** | **$735.40** |
| | |
| **Total Attorneys' Fees and Costs** | **$7,709.40** |

**Accordingly, I award a lump sum in the amount of $7,709.40, representing reimbursement for petitioner's attorneys' fees and costs, in the form of a check payable to petitioner and her attorney, Mr. Andrew Downing.**

In absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court shall enter judgment in accordance herewith.

**IT IS SO ORDERED.**

s/Thomas L. Gowen
Thomas L. Gowen
Special Master